IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

                Plaintiff,

vs.                                       No. 1:10-cr-03461-001 JH
                                       No. 1:16-CV-00697

JOHN ANZURES,

                Defendant.


## <u>MOTION TO CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255</u>

Petitioner, John Anzures, through his attorney of record, Alonzo J. Padilla, Assistant Federal Public Defender, moves this Court for an order correcting his sentence pursuant to the dictates of *United States v. Johnson*, 576 U.S. ___, 135 S.Ct. 2551 (June 26, 2015), and *Welch v. United States*, 136 S.Ct. 1257 (2016), which explicitly held that the Johnson decision applies retroactively to cases on collateral review.

### I.      Procedural History

On April 11, 2012, Mr. Anzures pled guilty to the one count Indictment charging him with being a Felon in Possession of a Firearm.  The plea agreement was entered pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and agreed upon a sentence of 15 years or 180 months.

On July 10, 2012, Mr. Anzures appeared for sentencing.  The court accepted the plea agreement entered into by the parties, and imposed a sentence of 180 months or 15

years.   In this motion, Mr. Anzures asserts that the predicate offenses for the armed career

criminal act (ACCA) are no longer valid under the holding of the *Johnson* decision.

The Presentence Report in Mr. Anzures' case identified three offenses relied upon

by probation to support the conclusion that Mr. Anzures was an armed career criminal

facing a minimum sentence of 15 years under 18 U.S.C. § 924(c).   At ¶9, p. 9 of the

Presentence Report the following three prior convictions are described:

1) On· March 14, 1997, the defendant was convicted of Count 1: Aggravated
   Assault (deadly weapon) (fourth degree felony) a crime which occurred
   on September 20, 1996. The defendant was convicted in the Second
   Judicial District Court, Albuquerque, New Mexico (Case No. D-202-CR-
   19970- 00923).

2) On March 26, 1997, the defendant was convicted of Count 1: Burglary
   (Commercial/Automobile) (fourth degree felony), a crime which occurred
   on June 9, 1996. The defendant was convicted in the Second Judicial
   District Court, Albuquerque, New Mexico (Case No. D-202-CR-1996-
   02708).

3) On January 7, 2005, the defendant was convicted of Count 1: Aggravated
   Assault (deadly weapon) (fourth degree felony) a crime which occurred
   on May 28, 2004. The defendant was convicted in the Second Judicial
   District Court, Albuquerque, New Mexico (Case No. D-202-CR-2004-
   2297).

The plea agreement entered into by the parties pursuant to Rule 11(c)(1)(C)

contained language which stated the defendant "agrees to waive any collateral attack to

defendant's conviction pursuant to 28 U.S.C. § 2255, except on the issue of counsel's

ineffective assistance in negotiating or entering this plea or this waiver."   The 15 year

sentence agreed upon by the defendant represented the mandatory minimum sentence he

could receive upon conviction of that offense.   If Mr. Anzures is correct in his assertion

that the offenses relied upon in sentencing him as an armed career criminal were not crimes of violence then the mandatory minimum sentence he faces will change dramatically. Instead of facing a minimum sentence of 15 years to life, he will be looking at not more than the maximum sentence of ten years.   The government may choose not to enforce such such a stipulation where the defendant forfeits his right to contest the sentence through a collateral petition.   However, counsel has been unable to ascertain the position of the Department of Justice or the United States Attorney's Office on waivers of collateral relief in cases of this nature arising under the holding in *Johnson*.   Furthermore, if the enforcement of a waiver will result in a miscarriage of justice, the court may reconsider the merits of the petition.   See *United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (*en banc*).   In *Hahn*, the Tenth Circuit held that a miscarriage of justice occurs if the sentence exceeds the statutory maximum.

See also, *United States v. Elliot*, 264 F. 3d 1171, 1173 (10th Cir. 2001), quoted by the Court in *Hahn*.   Under the ACCA, which controlled Mr. Anzures' sentence, he faced a mandatory minimum sentence of 15 years.   *See* 18 U.S.C. § 922(c)(1).   Therefore, if the the Court agrees with the issues raised by Mr. Anzures, his sentence clearly exceeds the statutory maximum for his conviction.   To satisfy the miscarriage of justice factor the Supreme Court has held that the "error [must] seriously affect [ ] the fairness, integrity or public reputation of judicial proceedings" as that test was described in *United States v. Olono*, 507 U.S. 725,732 (1993).   Enforcing a waiver that was entered before an

unanticipated change in the sentencing law, which would keep the petitioner incarcerated beyond the current maximum sentence for a sentence meets such a test.

In a Ninth Circuit opinion, authored by Judge Tymkovich, sitting as a designated judge, the Ninth Circuit provided an exception to a waiver provision if the sentence imposed was illegal.   *See United States v. Bohlan*, 495 F.3d 621, 624 (9th Cir. 2016), citing *United States v. Portillo-Cano*, 192 F.3d 1246, 1252 (9th Cir. 1999).   In this case, Mr. Anzures was sentenced under a provision of law declared by the United States Supreme Court to be unconstitutionally vague, which would result in a finding that his sentence is illegal.   Since the Government may choose not to enforce the waiver in this exceptional circumstance, the Petitioner will refrain from further argument on this point and await the Government's response.

II.     **Aggravated Assault (Deadly Weapon) Does Not Qualify as a Crime of Violence And Cannot Be Used to Enhance Mr. Anzures' Sentence Under the ACCA.**

Mr. Anzures's two prior convictions for aggravated assault with a deadly weapon in violation of N.M.S.A 1978, § 30-3-2(A), should not be considered crimes of violence.   The offense of aggravated assault does not necessarily require the intentional use of violent force. N.M.S.A 1978, § 30-3-2(A) provides that "[a]ggravated assault consists of … unlawfully assaulting or striking at another with a deadly weapon."   In turn, Assault consists of either:

> A.   an attempt to commit a battery upon the person of another;
>
> B.   any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery; or

C.   the use of insulting language toward another impugning his
honor, delicacy or reputation.

N.M.S.A 1978 § 30-3-1.

In *Ramon Silva*, the Tenth Circuit considered whether a violation of Section 30-3-2(A) constitutes a crime of violence for ACCA purposes under the first two statutory definitions of "assault" – an attempted battery and menacing conduct.   *United States v. Ramon Silva*, 608 F.3d 663, 669-70 (10th Cir. 2010).   However, it analyzed only whether either of those means of committing assault had "as an element the use, attempted use, or threatened use of physical force against the person of another."   *Id.* at 669 (quoting 18 U.S.C. § 924(e)(2)(B)(i)).   Ramon Silva did not contest that the first theory of assault - attempted battery - had an element of attempted use of physical force, and the Court assumed that such a theory would qualify as a crime of violence.   *See id.* at 669 (discussing the defense arguments).   Ramon Silva instead argued that the second theory - related to menacing conduct - was not a crime of violence because it did not necessarily involve a threat of violent force.   *Id.* at 670.   The Court thus "focus[ed its] analysis" on that argument, and concluded, in a split decision, that New Mexico aggravated assault was a crime of violence because the menacing conduct provision required a threat of actual physical force with a deadly weapon.   *Id.* at 671.   Because the Tenth Circuit did not consider the insulting language prong, *Ramon Silva* should not be considered determinative of whether the offense necessarily "has as an element the use, attempted use, or threatened use of physical force against the person of another."   U.S.S.G. § 4B1.2(a)(1).   For the same reasons it would not satisfy the ACCA and cannot be used to enhance Mr. Anzures's sentence.

More recently, in *United States v. Rede-Mendez*, 680 F.3d 552, 560 (6th Cir. 2012), the Sixth Circuit considered whether Section 30-3-2(A) constitutes a crime of violence under Section

2L1.2 of the Guidelines, and concluded the New Mexico statute was a categorical mismatch with the Guideline definition.

First, the Court in *Rede-Mendez* considered the enumerated generic offense prong of the Guideline definition of a crime of violence, and asked whether New Mexico aggravated assault was a categorical match with the generic definition of "aggravated assault."   *Id.* at 557.   The Court easily concluded that "New Mexico's definition of aggravated assault' is broader than the Model Penal Code based definition,' and thus the generic definition.   *Id.*   Indeed, the Government conceded this point.   *Id.*   First, the New Mexico statute was overbroad because "[u]nlike the Model Penal Code or LaFave definitions, the New Mexico statute does not require specific intent to injure or to frighten the victim."   *Id.*   Second, "New Mexico's definition of aggravated assault is also broader than the generic version because the underlying assault can be committed solely by using insulting language."   *Id.*

The Court in *Rede-Mendez* also revisited whether the New Mexico offense "qualifies as a crime of violence under the 'element' prong."   *Id.* at 558.   This issue had been addressed in *Ramon Silva*, but the Court in *Rede-Mendez* employed a different analysis.   Instead of simply considering the first two means of committing assault – threatened battery or menacing conduct – the Court considered the third subsection of the definition of assault under Section 30-3-1, "the use of insulting language toward another impugning his honor, delicacy or reputation."   *Id.* The Court acknowledged *Ramon Silva's* prior holding, and noted that the Tenth Circuit did "not address the 'insulting language' prong," thus leaving the issue completely open.   *Id.* n. 5. Ultimately, the Court concluded that, under the elements prong, Section 30-3-2(A) was categorically not a crime of violence.   *Id.* at 560.   The Court's reasoning was simple.   Under a strict, elements-by-elements analysis, one could be guilty of violating Section 30-3-2(A) by

"using ... insulting language toward another impugning his honor, delicacy or reputation," "with

a deadly weapon."   *Id.* at 559-60.   In fact, the Sixth Circuit noted that in "construing the

elements of aggravated assault in *State v. DeMary*, the New Mexico Supreme Court held that,

'because Section 30-3-2 actually uses the word *assaulting* in its definition of aggravated assault,

it may become necessary to construe the definition of assault pursuant to Section 30-3-1,

N.M.S.A.1978,' and proceeded to list each subsection of § 30-3-1, including subsection (C), the

'insulting language' definition of assault.   99 N.M. 177 (1982)."   *Id.* at 558 n.7 (emphasis in

original).   Further, prosecutions for insulting language assault have been upheld in New Mexico.

*See State v. Parrillo*, 94 N.M. 98, 100 (N.M. Ct. App. 1979) (affirming conviction under Section

30-3-1(C)).   Under the construction contemplated by the New Mexico Supreme Court in

*DeMary*, one could commit an act that would be a violation of the law, but did not necessarily

"have, as an element, the use, attempted use, or threatened use of physical force against the

person of another."   *Rede-Mendez*, 680 F.3d at 560.   Indeed, in that construction, "[t]he use of a

deadly weapon may exacerbate the threat of physical force, but does not necessarily supply the

threat if it is not already present in the underlying crime."   *Id.* at 558 (footnote omitted).

Critically, the Sixth Circuit recognized that the elements analysis did not depend on the

likelihood of actual prosecution for that theory of liability.   *Id.* at 558 n. 7.   Instead, because

"the provision remains part of the New Mexico criminal code and thus available to prosecutors

in that state," it remained a possible construction under the elements analysis.   *Id.*   Accordingly,

New Mexico aggravated assault with a deadly weapon does not qualify as a crime of violence for

ACCA purposes.

> **III.    Mr. Anzures's Commercial Burglary Convictions Does Not Fall Under
> The ACCA's Enumerated Clause**

**A.**     ***In determining whether a state conviction falls under the ACCA's enumerated clause, courts apply either the categorical or modified categorical approach.***

To determine whether a past conviction is for a "violent felony" under the ACCA's enumerated clause, courts may use one of two methods of statutory analysis. One method "courts use...has become known as the 'categorical approach.'"  *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013).   Under the categorical approach, the court compares the offense of conviction to the elements of the generic offense, in this case, burglary.  *Taylor v. United States,* 495 U.S. 575 (1990); *see also Descamps*, 133 S.Ct. at 2281.   A prior burglary conviction is a "categorical" match if "its statutory definition substantially corresponds to 'generic' burglary" by including "the basic elements" of the generic offense.  *Taylor*, 495 U.S. at 599, 602.   However, if the statute of conviction defines burglary "more broadly" and criminalizes conduct beyond the elements of the generic offense, *Taylor* at 599, "a conviction under that law cannot count [categorically] as an ACCA predicate, even if the defendant actually committed the offense in its generic form."  *Descamps*, 133 S.Ct. at 2283.   In such cases, courts may use the modified categorical approach if the statute also "lists potential offense elements in the alternative, [and] renders opaque which element played a part in the defendant's conviction." *Id.*

Using the modified categorical approach, courts can examine a limited number of documents to determine whether a past conviction qualifies as a violent felony under the ACCA.  *Id.*   These documents allow courts to "look beyond the statutory elements," in

order to "focus...on whether the documents show that the elements of the generic offense were found by a jury or admitted by the defendant." *United States v. Mayer*, __F. Supp. 3d__, 2016 WL 520967 (D. Or. 2016), *aff'd* 560 F.3d 948 (9th Cir. 2016).   Documents which the court may use in its analysis ("*Shepard* documents") are "generally limited to...the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13 (2005).

### B.    *Taylor established the federal generic definition of burglary*.

In order to determine whether or not a state burglary conviction qualifies as a predicate under the ACCA's enumerated clause, the court looks to the federal, generic definition of burglary. In *Taylor*, the Supreme Court held that federal, generic burglary constitutes "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." 495 U.S. at 599.

### C.    *New Mexico Commercial Burglary is broader than generic burglary*.

The New Mexico burglary statute includes entry into "any vehicle, watercraft, [or] aircraft," NMSA 1978 30-16-3, and therefore "define[s] burglary more broadly, e.g. . . .by including places, such as automobiles...other than buildings." *Taylor*, 495 U.S. at 599.

Furthermore, New Mexico has historically defined "structure" and "entry" as broader than the federal definitions of those words. While in *United States v. Ramon-Silva*, 608 F.3d 663, 665 (10th Cir. 2010), this Court found that the term "structure"

9

encompassed moveable sheds, *Ramon-Silva* is distinguishable from Mr. Anzures's case.

The *Shepard* documents in *Ramon-Silva*, unlike those in Mr. Anzures's case, established

which type of structure he was alleged to have entered, and how he "entered."

> **D.**     **The modified categorical approach applies to the New Mexico burglary statute**

The New Mexico burglary statute "sets out one or more elements of the offense in

the alternative," *Descamps* 133 S.Ct. at 2281, by defining burglary, for instance as entry

into *either* buildings *or* non-buildings.   Therefore, the statute is both broader than the

federal, generic definition of burglary and divisible.   Consequently, this Court should use

the modified categorical approach to determine whether Mr. Anzures's commercial

burglary conviction meets the federal generic definition of burglary and qualify as

predicate violent felony under the ACCA.   In *Ramon-Silva*, this Court concurred.

There, it examined NMSA § 30-16-3 and concluded that the modified categorical

approach applies to this statute because it "contain[ed] a 'non-generic' definition of

burglary." *Ramon-Silva*, 608 F.3d at 665-66.

> **E.**     **The meanings of "structure" and "entry" in New Mexico law at the time of Mr. Anzures's convictions were far broader than the generic definition**

Because Mr. Anzures's charging documents include only "entry" into and

burglary of a "structure," and because, at the time of his convictions, "entry" and

"structure" were defined broadly in New Mexico, Mr. Anzures's burglary conviction is

not for generic burglary.   A review of court decisions interpreting "entry" and

"structure" illustrates this point:

1984:  *State v. Rodriguez*, 101 N.M. 192 (Ct. App. 1984), held that reaching into the open bed of a pickup truck constituted burglary.

1987:  *State v. Sanchez,*   105 N.M. 619 (Ct. App.1987) held that entering a public building during business hours and then passing into areas not open to the public (the loading dock area of A.P.K Auto Parts) to steal, constituted burglary.

1989:  One of only two cases in New Mexico history prior to 2012 to find that an allegation did not constitute burglary, *State v. Bybee,* 109 N.M. 44, 45 (Ct. App.1989), found that a vending machine did not qualify as a "structure," and so breaking into it was not burglary.

1990:  Following in the footsteps of *Rodriguez*, *State v. Reynolds,* 111 N.M. 263 (Ct. App.1990), held that reaching into engine compartment constituted burglary.

1993:  Three years later, *State v. Gregory,* 117 N.M. 104 (Ct. App.1993), found that accessing a post office box from outside a building constituted burglary because the back of the box opened to the inside of the post office building.

1995:  The only other case prior to 2012 to not ratify a characterization of something as a structure, *State v. Foulenfont,* 119 N.M. 788 (Ct. App.1995) found that a fenced area surrounding a mobile home office was not a structure.

1997:  This is the year Mr. Anzures was convicted of commercial burglary.

2002:   Two years later, *State v. Tower,* 133 N.M. 32 (Ct. App. 2002) held that

entry into a business contrary to a no trespass order constituted an

"unauthorized entry" and affirmed Tower's burglary conviction.

2008:   Six years after that, the New Mexico Court of Appeals, in *State v.*

*Gonzales,* 145 N.M. 110 (Ct. App. 2008) affirmed that a concrete pad

adjoining a commercial building, open on three sides with a roof,

constituted a "structure."

2010:   Two years after that, Court of Appeals opinions in *State v. Muqqddin*, 148

N.M. 845 (Ct. App. 2010) and *State v. Dominguez-Meraz* No. 30,382, 2010

WL 4924003 (Ct. App. 2010) held that putting a nail into a gas tank from

below the vehicle to drain it (*Muqqddin*), and breaking the plane of the

wheel well of a truck to remove lug nuts (*Dominguez-Meraz*) constituted

entries and therefore burglaries.

At the time of Mr. Anzures' commercial burglary conviction, New Mexico law

had gone far afield in construing virtually anything as a "structure" and virtually anything

as an "entry."   It was not until 2012 *State v. Office of Public Defender ex rel. Muqqddin*,

__ N.M. __,   285 P.3d 622 (2012), the New Mexico Supreme Court reversed the lower

court's holdings in *Muqqddin*, and overruled substantial prior case law.   Since then, New

Mexico law began to resemble federal generic law regarding the definitions of "structure"

and "entry."   In *ex. rel. Muqqddin*, the State Supreme Court expressed alarm at how far

afield New Mexico had strayed in what it considered to qualify as a burglary. It stated:

In more than 40 years, this Court has issued only one burglary
opinion and even then on a somewhat tangential issue. *See State v.
Gonzales,* 78 N.M. 218, 430 P.2d 376 (1967). By contrast, over that same
time our Court of Appeals has issued numerous opinions that, for the most
part, have expanded significantly the reach of the burglary statute, an
expansion that has occurred without any parallel change in the statute. The
opinions before us now illustrate the unprecedented scope of that expansion
. . .

*ex rel. Muqqddin*, 285 P.3d at 624. It continued:

Today it has become more common to add a burglary charge to other
crimes where the entry itself did not create or add any potential of greater
harm than the completed crime. Our Legislature has never expressed an
intent that burglary be used as an enhancement, nor has it clearly authorized
the steady progression of judicial expansion of burglary as seen over the
past 40 years . . .

*Id.*

Finally, the court held:

Notably, the [Bybee] Court [in finding that a vending machine was not a
"structure"] relied on the rule of lenity in coming to its conclusion, stating:

we do not believe the legislature intended the burglary statute to protect
space within anything constructed, no matter how small, absent specific
language in the statute evincing intent to include such structure within the
proscription of the statute. Thus, considering Section 30–16–3(B) in light of
the rule that criminal statutes are construed strictly against the state, we do
not interpret the language "or other structure" to apply to soft drink vending
machines located outside a dwelling house or other structure.   *Id.* at 46,
781 P.2d at 318. As the structures that can be burglarized have been
expanded over the years, the rule of lenity and the rule that criminal statutes
are construed strictly against the state seems to have been overlooked. . . .

*Id.* at 628 (quoting *State v. Bybee*, 109 N.M 44,45, 781 P.2D 316, 317 (Ct.App.
1989).

Following *ex. rel. Muqqddin*, the New Mexico courts have attempted to sync with

the generic definition of burglary. In so doing, they have limited its application.   In *State v. Archuleta,* 346 P.3d 390 (Ct. App. 2014) the Court of Appeals overruled *Tower* and held that entry into a commercial building contrary to a no-trespass order did not constitute commercial burglary.   In *State v. Baca,* ___ N.M. ___, 331 P.3d 971 (Ct. App. 2015), the   Court of Appeals held that entering a part of a commercial building open to the public did not constitute burglary.   But in *State v. Mestas*, ___ N.M. ___, 2016 WL 556322 (Ct. App. 2016) the court found that jumping over a clerk's counter at a motel to steal *did* qualify as burglary, and in *State v. Holt,* ___ N..M. ___, 352 P.3d 702 (Ct. App. 2015), reaching in through a window was found to constitute burglary.

### F.    The Shepard documents in Mr. Anzures's commercial burglary cases do not establish federal, generic burglary

Using the limited documents that *Shepard* requires under the modified categorical approach, there is nothing to indicate that the alleged "structures" in Mr. Anzures's case qualify as structures in the federal generic sense, nor that details of Mr. Anzures's "entry" qualify as an "entry" in the federal generic sense.

The grand jury indictment in Mr. Anzures's criminal case merely states in Count 1 that Mr. Anzures entered a "structure, New Mexico Storage and Lock…" [*See* Exhibit A, Indictment, CRCR-96-2708].   Mr. Anzures was charged under an alias, Sammy John Martinez.   It does not specify whether the structure was a storage unit or rather a separate area, for instance a fenced area attached to or surrounding the storage unit.   Nor does it specify whether the "entry" was breaking into a building, or entering a fenced area surrounding the storage units.

Consequently, the charging document did not clearly identify whether Mr. Anzures "entered" a "structure" in a manner recognized by the federal, generic definition of burglary.

The Ninth Circuit reached a similar conclusion with regard to the Oregon burglary statute.   Prior to *Johnson*, the Ninth Circuit had held that Oregon burglary was not generic burglary, but nonetheless qualified as a violent felony under the residual clause. After *Johnson*, however, Mr. Mayer's conviction and ACCA sentence were vacated by the Supreme Court and remanded.   The district court held that the ACCA sentence was no longer valid because his Oregon burglaries could only have qualified under the residual clause.   *See Mayer*, __ F. Supp. 3d __, 2016 WL 520967 (D. Ore. 2016) at *13 ("Defendant was not convicted of three predicate offenses under the ACCA, and he is not subject to the fifteen-year mandatory minimum.").   This was promptly affirmed on appeal.   *See Mayer*, 560 F.3d 948, 959 (9th Cir. 2016) (finding that Oregon burglary is broader than generic burglary because the statute does not limit burglary to "building[s] or structure[s]," but also includes non-structures (such as booths, vehicles, boats, and aircraft) that are regularly or intermittently used as lodgings).   Mr. Anzures is in the same posture as Mr. Mayer–prior to *Johnson*, his burglaries were "violent felonies" under the residual clause.   After *Johnson*, they don't qualify as violent felonies under *any* theory.

## VI.   Conclusion

Mr. Anzures is entitled to relief under § 2255 because, in light of *Johnson*, his sentence violates due process of law.  This Court should vacate his erroneous ACCA sentence and re-sentence him without the ACCA enhancement.

<table>
<tr>
<td>

I HEREBY CERTIFY THAT on
June 24, 2016, I filed the
foregoing electronically through
the CM/ECF system, which
caused the following to be
served by electronic means, as
more fully reflected on the
Notice of Electronic Filing:
AUSA Kimberly A. Brawley.

</td>
<td>

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489

</td>
</tr>
</table>

      *[Electronically filed on 6/24/16]*

    */s/ Alonzo J. Padilla*                 Alonzo J. Padilla, AFPD

Attorney for Defendant