IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff/Respondent,

vs.                                          Nos.    CR 10-3461 JCH
                                                      CIV 16-0697 JCH/LF

JOHN ANZURES,

       Defendant/Movant.

## MEMORANDUM OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Magistrate Judge Laura Fashing's Proposed Findings of Fact and Recommended Disposition, Doc. 70[1] (Report), and defendant/movant John Anzures's Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition, Doc. 73. Having carefully reviewed the record in this case and the relevant law, the Court overrules Anzures's objections and adopts the magistrate judge's recommendation to deny Anzures's motion.

## I.     Standard of Review

When a party files timely written objections to the magistrate judge's recommendation, the district court generally will conduct a de novo review and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(C); *see also* FED. R. CIV. P. 72(b)(3). To preserve an issue for de novo review, "a party's objections to the magistrate judge's report and recommendation must be both timely and specific." *United States v. One Parcel of Real Prop., With Buildings, Appurtenances,*

---

[1] Citations to "Doc." are to the document number in the criminal case, case number CR 10-3461 JCH, unless otherwise noted.

*Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).

## II.   Discussion

The magistrate judge recommended that the Court deny Anzures's challenge to his sentence under the Supreme Court's decision in *Samuel Johnson v. United States*,[2] 135 S. Ct. 2551 (2015)—which held that that residual clause in the Armed Career Criminal Act (ACCA) was unconstitutionally vague—because Anzures was sentenced without reference to the residual clause.  The magistrate judge concluded that at the time of Anzures's sentencing, there is no question that his commercial burglary conviction fell within the enumerated crimes clause of the ACCA.  Doc. 70 at 8–13.  In addition, his two prior convictions for aggravated assault with a deadly weapon fall within the ACCA's elements clause.  *Id.* at 14–17.  And, although the Court did not rely upon Anzures's prior aggravated battery conviction at his original sentencing in July 2012, it also qualifies as a violent felony under the ACCA's elements clause.  Thus, if the Court erred in relying on the commercial burglary conviction, any error was harmless because the aggravated battery conviction could be substituted for the commercial burglary conviction.  *Id.* at 17–28.

Anzures objects to the magistrate judge's Report on numerous grounds.  First, he argues that the magistrate judge erred in applying the Tenth Circuit's decision in *United States v. Snyder*, 871 F.3d 1122 (10th Cir. 2017), arguing that *Snyder* should be limited to its facts, that

---

[2] Courts have started to differentiate between the two relevant *Johnson* opinions by referring to this opinion as the *Samuel Johnson* opinion, and the earlier *Johnson* case, *Curtis Johnson v. United States*, 559 U.S. 133 (2010)—which held that the term "physical force" as used in the elements clause of the ACCA means violent force, or force capable of causing physical pain or injury to another—as the *Curtis Johnson* opinion.  I will adopt that convention, and will refer to the 2015 *Johnson* decision as the *Samuel Johnson* decision, and the 2010 *Johnson* decision as the *Curtis Johnson* decision.

following *Snyder* will lead to arbitrary and inconsistent results, that *Snyder* was wrongly decided, and that application of *Snyder* will result in an independent due process violation. Doc. 73 at 5–15. Second, he argues that the magistrate judge incorrectly concluded that aggravated assault with a deadly weapon in New Mexico necessarily has as an element the use, attempted use, or threatened use of physical force against another person. *Id.* at 15–27. Third, he argues that the magistrate judge erred in concluding that the government had not waived its right to rely on his prior aggravated battery conviction under New Mexico law as a predicate for the ACCA. *Id.* at 27–30. He further argues that if the Court considers this conviction, it does not qualify as a violent felony under the elements clause of the ACCA. *Id.* at 30–38. For the following reasons, the Court overrules Anzures's objections to the magistrate judge's Report.

A. This Court is Bound by the Tenth Circuit's Decision in *Snyder*, and the Magistrate Judge Correctly Applied its Analysis.

Anzures vehemently argues that this Court should not apply the Tenth Circuit's decision in *Snyder*, 871 F.3d 1122, on a variety of grounds. *See* Doc. 73 at 5–15. The Court, however, is not free to disregard binding Tenth Circuit precedent. "A district court must follow the precedent of this circuit, regardless of its views concerning the advantages of the precedent of our sister circuits." *United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990). Indeed, the Tenth Circuit recently characterized *Snyder* "as the leading authority in this circuit on determining if a sentencing court used the ACCA's residual clause in sentencing." *United States v. Washington*, — F.3d —, 2018 WL 2208475, *3 n.4 (10th Cir. May 15, 2018). Thus, to the extent that Anzures objects to the magistrate judge's report on the ground that *Snyder* was wrongly decided, or that the Court should decline to follow *Snyder*, or that the application of *Snyder* will lead to arbitrary results or a due process violation, those objections are overruled.

This Court is bound to follow *Snyder*. Consequently, the only issue before the Court is whether the magistrate judge erred in her application of *Snyder* to this case.

As a threshold matter, Anzures argues that the Court should not apply *Snyder* because there was no evidence in this case that the Court did not rely on the residual clause in determining that Anzures's prior commercial burglary offense was a violent felony under the ACCA. *See* Doc. 34 at 5; *see also id.* at 10–11 (arguing that before the Supreme Court's decision in *Samuel Johnson*, sentencing courts routinely relied on the residual clause to determine that a prior offense qualified as a violent felony under the ACCA). He asserts that if the record is unclear or silent as to whether the Court applied the residual clause at sentencing, the defendant is entitled to relief under *Samuel Johnson*. *See id.* at 12–13. The Tenth Circuit, however, has just rejected this approach. In *Washington*, the court held that on collateral review, the defendant bears the burden of showing "by a preponderance of the evidence—*i.e.*, that it is more likely than not—"that a sentencing court relied on the residual clause in determining that the defendant was ACCA eligible to be entitled to relief under *Samuel Johnson*. *Washington*, 2018 WL 2208475, at *3. In reaching this conclusion, the court specifically rejected the analysis of both the Ninth and Fourth Circuits, which have held that a defendant need only show that the sentencing court "may have" relied on the residual clause to establish a claim under *Samuel Johnson*. *See id.* (rejecting analysis in *United States v. Geozos*, 870 F.3d 890, 896 (9th Cir. 2017) and *United States v. Winston*, 850 F.3d 677, 682 (4th Cir. 2017)). In short, it's Anzures's burden to show by a preponderance of the evidence that the Court relied on the residual clause in sentencing him. If he fails to make this showing, he is not entitled to relief.

In this case, as was true in *Washington*, the Court did not state which clause it was relying upon when it decided that Anzures was subject to the ACCA. *See generally* Doc. 45

(sentencing transcript); *see also* PSR ¶ 39 (noting that Anzures was subject to ACCA without specifying which clause of the ACCA applied).  Consequently, Anzures bears the burden of showing, based on the relevant legal environment when he was sentenced in July 2012 and on the record, that it was more likely than not that the Court relied on the residual clause in sentencing him.  *See Washington*, 2018 WL 2208475, at *4.  This he cannot do.

In July 2012, when Anzures was sentenced, the most recent published Tenth Circuit opinion on whether a New Mexico commercial burglary conviction qualified as a violent felony under the ACCA was *United States v. Ramon Silva*, 608 F.3d 663 (10th Cir. 2010).  As the magistrate judge correctly pointed out, Anzures was convicted under the exact same statute that was at issue in *Ramon Silva*.  *See Ramon Silva*, 608 F.3d at 665.  That statute provides:

> Burglary consists of the unauthorized entry of any vehicle, watercraft, aircraft, dwelling or other structure, movable or immovable, with the intent to commit any felony or theft therein.
>
> A.  Any person who, without authorization, enters a dwelling house with intent to commit any felony or theft therein is guilty of a third degree felony.
>
> B.  Any person who, without authorization enters any vehicle, watercraft, aircraft or other structure, movable or immovable, with intent to commit any felony or theft therein is guilty of a fourth degree felony.

N.M. STAT. ANN. § 30-16-3.  In *Ramon Silva*, the court noted that "New Mexico courts have interpreted the phrase 'other structure' in subsection B 'to require an enclosure similar to a vehicle, watercraft, aircraft, or dwelling.'"  608 F.3d at 665 (quoting *State v. Foulenfont*, 1995-NMCA-028, ¶ 11, 119 N.M. 788, 791, 895 P.2d 1329, 1332).  And because § 30-16-3(B) included the unlawful entry of locations that went beyond the generic definition of burglary, the court employed the modified categorical approach (as understood in 2010) and examined the "charging document, plea agreement, and plea colloquy to determine the character of [the defendant's] admitted burglary."  *Id.* at 665–66 (internal quotation marks omitted).

The indictment to which Ramon Silva pled guilty charged him with "enter[ing] a structure, a shed." *Id.* at 666. Ramon Silva argued that a shed did not "satisfy the 'building or other structure' element in generic burglary" because it was not designed for human habitation or business and was not permanent. *Id.* The court rejected this argument. It reasoned that Supreme Court precedent and its own cases made clear that the "building or structure" element of generic burglary was broad, and included "both buildings and less complete structures." *Id.* at 668 (emphasis and internal quotation marks omitted). It included "a building or other place designed to provide protection for persons or property against weather or intrusion, but does not include vehicles or other conveyances whose primary purpose is transportation." *Id.* (quoting *United States v. Cummings*, 531 F.3d 1232, 1235 (10th Cir. 2008)). The court held "that the 'building or other structure' element in generic burglary encompasses those burglaries that have been 'committed in a building or enclosed space . . ., not in a boat or motor vehicle.'" *Id.* at 668–69 (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005)).

Applying the analysis of *Ramon Silva* to this case, there can be little doubt that when the Court sentenced Anzures, his commercial burglary conviction fell within the scope of the ACCA's enumerated crimes clause. Anzures pled guilty to an indictment that charged him with "enter[ing] a structure, New Mexico Storage and Lock, located at 220 Isleta SW, without authorization or permission, with intent to commit any felony or a theft therein," in violation of N.M. STAT. ANN. § 30-16-3(B). Doc. 40-1 at 1. That indictment makes clear that the place Anzures entered was a structure designed to protect property from intrusion, and was not a boat, vehicle, airplane, or other conveyance whose primary purpose was transportation. *See id.* Thus, the Court's application of the modified categorical approach as it existed in 2012 would have resulted in a determination that Anzures's commercial burglary conviction constituted generic

burglary.  Anzures has failed to establish by a preponderance of the evidence that the Court relied on the residual clause in finding that Anzures's commercial burglary conviction was a violent felony under the ACCA.  The magistrate judge correctly applied the *Snyder* analysis to this case.

Anzures argues that *Ramon Silva* and other cases that applied the modified categorical approach in a similar fashion "may have represented a trend in the circuit at the time[,] but they were not controlling law."  Doc. 73 at 6.  He says that the Tenth Circuit's earlier decision in *United States v. Zuniga-Soto*, 527 F.3d 1110 (10th Cir. 2008) highlighted the intra-circuit split on the correct application of the modified categorical approach, and that *Zuniga-Soto* made clear that "when faced with an intra-circuit conflict, [courts] should follow earlier, settled precedent over a subsequent deviation therefrom." *Id.* at 1121 (quoting *Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996)).  *Zuniga-Soto*, however, dealt with the application of the modified categorical approach to the determination of whether the Texas crime of assault on a public servant had as an element the use, attempted use, or threatened use of physical force.  *Id.* at 1113. The court noted that some prior Tenth Circuit panels had used the modified categorical approach to determine whether the facts underlying a defendant's prior conviction actually involved the use of force, which was impermissible.  *See id.* at 1121.  Instead, courts only were permitted to examine specified judicial records to determine which part of a statute had been charged against a defendant, which in turn determined which part of the statute a court should examine on its face.  *Id.*

Nothing about the holding in *Ramon Silva* is obviously in conflict with *Zuniga-Soto*, and there is no reason to think that the Court would have relied on *Zuniga-Soto*—which had nothing to do with either burglary or the enumerated crimes clause of the ACCA—to determine that

Anzures's prior commercial burglary conviction did not fall within the enumerated crimes clause of the ACCA.  In 2013, after Anzures was sentenced, the Supreme Court explained the modified categorical approach as follows:

> We have previously approved a variant of this method—labeled (not very inventively) the "modified categorical approach"—when a prior conviction is for violating a so-called "divisible statute."  That kind of statute sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile.  If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction.  The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime.

*Descamps v. United States*, 570 U.S. 254, 257 (2013).  This is the analysis that the court in *Ramon Silva* applied.  The New Mexico burglary statute set forth the elements of commercial burglary in the alternative, stating that burglary involves the unlawful entry into "any vehicle, watercraft, aircraft **or** other structure."  N.M. STAT. ANN. § 30-16-3(B).  The court examined the charging document only to determine whether the defendant was convicted of the part of the statute prohibiting entry into a "structure," which the court held constituted generic burglary, verses some other alternative, i.e., a vehicle, watercraft, or aircraft.  *See Ramon Silva*, 608 F.3d at 665–69.  It was not until the Supreme Court's 2016 decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016), which distinguished between the *elements* of a crime from the *means* of committing that crime, *see id.* at 2249–50, that the Tenth Circuit had any reason to question its approach in *Ramon Silva.  See Washington*, 2018 WL 2208475, at *4 n.5 (noting that *Ramon Silva* was abrogated by *Mathis*).

Indeed, Anzures cites another case that makes it even more obvious that in 2012, as the modified categorical approach was understood then, the Court found that his commercial

burglary conviction fell within the enumerated crimes clause of the ACCA, not the residual clause. *See* Doc. 73 at 6 (citing *United States v. King*, 422 F.3d 1055, 1057 (10th Cir. 2005) to support the proposition that New Mexico's commercial burglary statute is not categorically generic burglary). *King* presents facts remarkably similar to this case. In *King*, the sentencing court enhanced the defendant's sentence under the ACCA based in part on the defendant's prior conviction for commercial burglary under the same statute at issue here and in *Ramon Silva*. *King*, 422 F.3d at 1056, 1058. The court held that because New Mexico's commercial burglary statute is broader than generic burglary, the sentencing court properly could employ the modified categorical approach and examine specified court documents to determine whether the defendant was convicted of generic burglary. *Id.* at 1057. The defendant in *King* pled guilty to an indictment that charged him with entering "a *structure*, American Self-Storage Unit # 136 . . ., without authorization or permission, with intent to commit a theft therein." *Id.* at 1058 (emphasis in original). The court held that "because the indictment and plea agreement sufficiently establish that Mr. King entered a structure," his crime constituted generic burglary, and the sentencing court properly enhanced his sentence under the ACCA. *Id.*

The indictment in *King* is nearly identical to the one at issue here. *See* Doc. 40-1 at 1. In 2012, when the Court sentenced Anzures, it was bound by *King* and *Ramon Silva*. Anzures does not explain why the Court would have resorted to the analysis set forth in *Zuniga-Soto*—which held that assault of a public servant under Texas law was not a crime of violence under the Guidelines because it only required only a *mens rea* of recklessness and therefore did not have as an element the use of physical force, 527 F.3d at 1121–25—when there were two binding, published Tenth Circuit opinions directly on point. *See Washington*, 2018 WL 2208475, at *4 n.7 (noting that it was "highly unlikely" that the sentencing court considered the inapposite cases

cited by the defendant when there were two published decisions that "squarely addressed the issue before the district court").  Thus, to the extent that Anzures objects to the magistrate judge's Report because *King* and *Ramon Silva* (and the later case of *United States v. Trent*, 767 F.3d 1046 (10th Cir. 2014)) merely represented a "trend" and are "irrelevant," *see* Doc. 73 at 6, those objections are overruled.  Having conducted a careful de novo review of the magistrate judge's Report and Anzures's objections, I find that the magistrate judge correctly applied the analysis in *Snyder*.  Given the relevant legal background in 2012, the Court had no reason to resort to the residual clause in finding that Anzures's commercial burglary conviction was a violent felony under the ACCA.

   B.  <u>The Magistrate Judge Correctly Determined That Anzures's Prior Convictions for Aggravated Assault With a Deadly Weapon Fall Within the Elements Clause of the ACCA</u>.

   Anzures argues that the magistrate judge incorrectly concluded that the Court was bound by the Tenth Circuit's decision in *United States v. Maldonado-Palma*, 839 F.3d 1244 (2016).  Doc. 76 at 15–27.  The court in *Maldonado-Palma*, 839 F.3d at 1250, held that New Mexico aggravated assault with a deadly weapon is categorically a crime of violence under USSG § 2L1.2's elements clause, which is identical to the ACCA's elements clause.  *Compare* USSG § 2L1.2, comment. (n.2) ("'Crime of Violence' means . . . any other offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another") *with* 18 U.S.C. § 924(e)(2)(B)(i) ("the term 'violent felony' means any crime . . . that[] has as an element the use, attempted use, or threatened use of physical force against the person of another").  Another panel of the Tenth Circuit recently held that *Maldonado-Palma* compelled the conclusion that New Mexico aggravated assault with a deadly weapon also "satisfy[ies] the ACCA's elements clause, and therefore, the Supreme Court's invalidation of the ACCA's residual clause" does not afford relief to a defendant whose sentence was enhanced based on this

offense. *United States v. Pacheco*, 2018 WL 1673153, *3 (10th Cir. Apr. 6, 2018) (unpublished). Based on *Maldonado-Palma*, which now has been reinforced by *Pacheco*, the magistrate judge correctly concluded that Anzures's two prior convictions for aggravated assault with a deadly weapon constitute violent felonies under the ACCA's elements clause.

Anzures argues at length why he believes *Maldonado-Palma* was wrongly decided, *see* Doc. 73 at 15–27, but, as explained above, the Court "must follow the precedent of this circuit, regardless of its views concerning the advantages of the precedent of our sister circuits." *Spedalieri*, 910 F.2d at 709 n.2. The only possible avenue for the Court to not follow *Maldonado-Palma* is if the New Mexico Supreme Court has issued an intervening contrary decision. *See Wankier v. Crown Equipment Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) ("when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue"). Anzures seems to argue that this applies because the New Mexico Court of Appeals—notably *not* the New Mexico Supreme Court—issued an opinion in January 2018 reviewing the sufficiency of evidence necessary to support an aggravated assault with a deadly weapon conviction, *see State v. Branch*, 2018-NMCA- —, — P.3d —, 2018 WL 525423 (Jan. 23, 2018), and thus is an intervening state court decision.

Anzures's argument is without merit. First, the portion of the 2018 New Mexico Court of Appeals decision in *Branch* that relates to the elements of an aggravated assault conviction is identical to the 2016 version of this opinion, which was issued before *Maldonado-Palma*. *Compare Branch*, 2018-NMCA- —, — P.3d —, 2018 WL 525423, at *2–*4 *with State v. Branch*, 2016-NMCA-071, ¶¶ 10–19, 387 P.3d 250, 255–57. Second, and more importantly, the

2018 *Branch* decision is not a decision by New Mexico's *highest* court, and therefore does not

permit this Court to refuse to follow binding Tenth Circuit precedent. *See Wankier*, 353 F.3d at

866; *see also Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1297 (10th Cir. 2010) (court refused to

consider intervening decision by the Colorado Court of Appeals as reason to disregard binding

Tenth Circuit precedent because decision was not by Colorado's highest court). The two cases

on which Anzures relies involve intervening decisions by the relevant state's highest court. *See*

Doc. 73 at 26 (citing *United States v. Badger*, 818 F.3d 563, 570 (10th Cir. 2016) and *Kinnison*

*v. Houghton*, 432 F.2d 1274, 1277 (10th Cir. 1970)). These cases do not permit this Court to

decline to follow binding Tenth Circuit precedent based on a decision by a state's intermediate

appellate court. *See Badger*, 818 F.3d at 570–71 (court departed from earlier Tenth Circuit

precedent based on statements by Utah Supreme Court); *Kinnison*, 432 F.2d at 1277 (court

retreated from earlier Tenth Circuit decision based on intervening decision by the Wyoming

Supreme Court).

 In short, there is no intervening decision by the New Mexico Supreme Court that would

permit this Court to decline to follow *Maldonado-Palma*, and the Tenth Circuit's recent decision

in *Pacheco* just reinforces the correctness of the magistrate judge's analysis. Anzures's prior

New Mexico convictions for aggravated assault with a deadly weapon are categorically violent

felonies under the elements clause of the ACCA. Anzures is not entitled to relief under *Samuel*

*Johnson.*

  C. The Magistrate Judge Correctly Concluded That Anzures's Prior Conviction for
    Aggravated Battery Also Qualifies as a Violent Felony Under the Elements Clause of
    the ACCA, and That the Government Did Not Waive Its Ability to Rely on This
    Conviction as an ACCA Predicate Offense.

 Although the Court may not need to reach this issue, Anzures argues that the magistrate

judge incorrectly concluded that the government had not waived its right to rely on Anzures's

prior conviction for aggravated battery as an ACCA-qualifying felony if the Court erred in relying on his commercial burglary conviction. Doc. 73 at 28–30. He further argues that even if the Court considers this conviction, it does not qualify as a violent felony under the elements clause of the ACCA. *Id.* at 30–38. Neither argument is persuasive.

1. *The Government Did not Waive its Ability to Rely on Anzures's Aggravated Battery Conviction as an ACCA Qualifying Offense.*

The magistrate judge recommended that the Court hold that if it incorrectly relied on Anzures's prior commercial burglary conviction in finding that he qualified for the ACCA enhancement, any error was harmless because he had another qualifying conviction: aggravated battery. Doc. 70 at 17–19. Anzures does not specifically address the magistrate judge's harmless error analysis. Doc. 73 at 28–30. Instead, he insists that because the government did not object to the PSR prior to sentencing and require the Court to determine whether Anzures had four qualifying ACCA predicate offenses instead of just three, the government has "waived" its ability to rely on this conviction. *See id.* In making this argument, Anzures relies exclusively on a string of Eleventh Circuit cases, and does not address the district court cases from Colorado and New Mexico on which the magistrate judge relied. *See id.* For the following reasons, the Court is not persuaded by Anzures's argument.

As the Supreme Court and the Tenth Circuit repeatedly have explained, there is a difference between waiver and forfeiture. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). The Tenth Circuit has further explained that "waiver is accomplished by intent, but forfeiture comes about through neglect." *United States v. Zubia-Torres*, 550 F.3d 1201, 1205 (10th Cir. 2008) (internal quotation marks and brackets omitted). At issue in *Zubia-Torres* was

"whether defense counsel's acquiescence in the PSR guideline calculation constituted a waiver of the right to raise . . . on appeal [whether his prior drug trafficking conviction constituted a "drug trafficking offense" within the meaning of the relevant Guideline provision], as opposed to a mere forfeiture." *Id.* at 1204. The court held that because the defendant never had made the argument that his prior drug-related conviction was not a "drug trafficking offense" within the meaning of the Guidelines, he did not affirmatively abandon that argument. *Id.* at 1207. Nor did he do anything to invite the alleged error. *Id.* Thus, defense counsel's "rote statement" that she did not object to the PSR did not constitute a waiver. *Id.*

The same is true in this case. There is no indication in the record that the government argued that Anzures's prior aggravated battery conviction was a violent felony under the ACCA, then affirmatively abandoned that argument. Nor is there any indication that the government ever affirmatively conceded that the aggravated battery conviction was not an ACCA-predicate offense. The indictment in this case alleged that Anzures had eight prior felony convictions, including aggravated battery with a deadly weapon, commercial burglary, and two separate offenses of aggravated assault with a deadly weapon, among others. *See* Doc. 4. The government and Anzures agreed—without specifying which of the eight convictions listed in the indictment made it so—that Anzures qualified for the ACCA enhancement, and that he should serve the minimum mandatory sentence of 15 years in prison. *See* Doc. 36 ¶ 5 (plea agreement under Rule 11(c)(1)(C) to 15 years in prison). The government and Anzures further agreed that Anzures previously had been convicted of the four offenses at issue here (among many others), and that each of these convictions was valid. *See id.* ¶¶ 9(b)(1), (3), (5), (8); 17(a), (c), (e), (h). The presentence report stated that Anzures qualified for the ACCA enhancement, and listed two aggravated assault convictions and the commercial burglary conviction under the heading

"Armed Career Criminal Provision," which refers both to the ACCA and the Guidelines.  PSR ¶ 39.  The presentence report did not state that these were all Anzures's ACCA-qualifying convictions.  *See id.*  Neither party filed written objections to the presentence report, and when the Court asked at sentencing whether there were any objections, only defense counsel answered, "No, ma'am."  Doc. 45 at 3.  At sentencing, the Court found that Anzures was an armed career criminal without specifying the convictions on which it was relying.  *Id.* at 9.  Under these circumstances, the government did not intentionally relinquish or abandon its right to rely on any of Anzures's prior convictions as potential ACCA-predicate offenses should the Court determine that it erred in relying on any of the three listed in the presentence report under paragraph 39.

Anzures urges the Court to follow the Eleventh Circuit's waiver rule, which prohibits the government from arguing that a "previously unmentioned felony can now take the place of a conviction that was relied upon by the sentencing court, but which no longer supports the sentence."  *McCarthan v. Director of Goodwill Industries-Suncoast, Inc.*, 851 F.3d 1076, 1121 (11th Cir. 2017) (en banc) (Martin, C.J., dissenting).  Anzures has not pointed to another circuit that has adopted this waiver rule, nor could the Court find one.  Moreover, unlike the situation in *McCarthan*, Anzures's prior aggravated battery with a deadly weapon was not "previously unmentioned."  This conviction was "mentioned" in the indictment, twice in the plea agreement, and in the presentence report.

Given that harmless error analysis unquestionably applies to § 2255 proceedings, *United States v. Dago*, 441 F.3d 1238, 1246 (10th Cir. 2006), and that there was no reason for the government to object to a presentence report that was entirely consistent with its understanding that Anzures qualified for the ACCA enhancement, the Court finds that the magistrate judge's analysis makes sense and is consistent with Tenth Circuit precedent.  Notably, after the

magistrate judge issued her Report, the Tenth Circuit affirmed Judge Browning's opinion in *United States v. Garcia*, 07-CR-788 JB, — F.3d —, 2017 WL 2271421, *19–*21 (D.N.M. Jan. 31, 2017), which held that the government had not waived its right to rely on the defendant's robbery conviction as an ACCA-qualifying conviction by not objecting to the presentence report, which did not include it as a predicate offense. In affirming Judge Browning, the Tenth Circuit held that it was the government's burden to prove that the district court's reliance on the ACCA's residual clause was harmless, and that it could do so by showing that another conviction—one not relied on by the district court at sentencing—qualified as a violent felony under the elements clause (or presumably the enumerated crimes clause) of the ACCA. *See United States v. Garcia*, 877 F.3d 944, 948–56 (10th Cir. 2017). The Court therefore overrules Anzures's argument that the government has waived its ability to rely on his prior aggravated battery conviction as an ACCA-predicate offense.

2. *Anzures's Prior Felony Aggravated Battery Conviction is Categorically a Violent Felony Under the ACCA; Therefore, Any Reliance on the Residual Clause in Determining that Anzures's Prior Commercial Burglary Conviction was a Violent Felony was Harmless Error.*

In his objections, Anzures argues that the magistrate judge erred in finding that the felony aggravated battery statute under which he was convicted qualifies as a violent felony under the elements clause of the ACCA. Doc. 73 at 30–38. He argues that the magistrate judge erred in concluding that the Tenth Circuit's decisions in *United States v. Barraza-Ramos*, 550 F.3d 1246 (10th Cir. 2008) and *United States v. Hays*, 526 F.3d 674 (10th Cir. 2008) do not control this case, and that she erred in concluding that the felony aggravated battery statute's requirement that an unlawful touching that inflicts great bodily harm (or could inflict such harm) necessarily requires physical force. *See id.* at 30–36. He further argues that the magistrate judge erred in

applying the modified categorical approach.  *See id.* at 36–38.  The Court will address each of

Anzures's arguments, albeit in a slightly different order.

> a. *The Magistrate Judge Correctly Determined that Felony Aggravated Battery in New Mexico Requires More than a Mere Touch.*

Anzures argues that "[c]ommon law battery is an element of aggravated battery and the

mere touch needed to complete the offense is not the violent physical force described in [*Curtis*

*Johnson  v United States*, 559 U.S. 133 (2010)] as necessary to meet the force clause definition."

Doc. 73 at 33.  Common law battery, however, is a misdemeanor crime distinct from the

aggravated battery statute at issue here, which is a felony.  *Compare* N.M. STAT. ANN. § 30-3-4

(codifying common law battery and stating "[w]hoever commits battery is guilty of a petty

misdemeanor") *with* N.M. STAT. ANN. §§ 30-3-5(A), (C) (describing felony aggravated battery).

One "key distinction between the two battery statutes is the mens rea requirement."  *State v.*

*Skippings*, 2011-NMSC-021, ¶ 14, 150 N.M. 216, 258 P.3d 1008, 1012.  "Under the aggravated

battery statute, it must be established that the perpetrator possessed the specific intent to injure

that person or another."  *Id.*  Felony aggravated battery also requires proof either that the

perpetrator touched the victim with a deadly weapon, or that the perpetrator touched the victim in

a way that caused great bodily harm or in a way that likely would result in death or great bodily

harm.  N.M. STAT. ANN. § 30-3-5(C).  Anzures's argument ignores these additional elements of

felony aggravated battery.  When viewed all together, the elements of felony aggravated battery

require "violent force," not merely a touch.

The elements of felony aggravated battery involving great bodily harm are as follows:

1. The defendant touched or applied force to the victim.
2. The defendant intended to injure the victim or another.
3. The defendant either caused great bodily harm to the victim or acted in a way
   that would likely result in death or great bodily harm to the victim.

N.M. R. ANN., Crim. UJI 14-323.  "Great bodily harm means an injury to a person which creates a high probability of death or results in serious disfigurement or results in loss of any member or organ of the body or results in permanent or prolonged impairment of the use of any member or organ of the body."  N.M. R. ANN., Crim. UJI 14-131 (brackets and footnote omitted).

The elements of felony aggravated battery with a deadly weapon are as follows:

1.  The defendant touched or applied force to the victim with a deadly weapon.
2.  The defendant intended to injure the victim or another.

N.M. R. ANN., Crim. UJI 14-323.  An object is a deadly weapon if, when used as a weapon, it could cause death or great bodily harm.  *Id.*

Thus, the question with respect to the three means of committing aggravated battery is whether the additional elements—that the defendant acted with the intent to injure and either caused great bodily harm, acted in a way that likely would cause death or great bodily harm, or used a deadly weapon—necessarily involves the use of violent force.  *See United States v. Taylor*, 843 F.3d 1215, 1223 (10th Cir. 2016) (although *simple* battery does not satisfy the elements clause because it could be accomplished by only the slightest touch, the question is whether battery that includes the aggravating element of a deadly weapon is sufficient to satisfy the violent force requirement).  Tenth Circuit precedent evaluating similar statutes compels the conclusion that these additional elements satisfy the violent force requirement of the ACCA.

For example, in *United States v. Treto-Martinez*, 421 F.3d 1156, 1160 (10th Cir. 2005), the Tenth Circuit held that Kansas aggravated battery satisfied the force clause of the Guidelines.[3]  Conviction under one prong of the statute required "physical contact . . . whereby

---

[3] Although *Treto-Martinez* pre-dates *Curtis Johnson*, the court in *Treto-Martinez* did not apply a lesser standard of "physical force" in interpreting the force clause.  *Compare Treto-Martinez*, 421 F.3d at 1159 (holding that "[a]lthough not all physical contact performed in a rude, insulting[,] or angry manner would rise to the level of physical force," (i.e., more than mere touching is required), such contact would satisfy the force clause if carried out with a deadly

great bodily harm, disfigurement or death can be inflicted." *Id.* "It is clear," the court held, "that a violation of this provision" suffices to satisfy the force clause. *Id.* "No matter what the instrumentality of the contact, if the statute is violated by contact that can inflict great bodily harm, disfigurement or death, it seems clear that, at the very least, the statute contains as an element the "threatened use of physical force." *Id.* This prong of the Kansas aggravated battery statute is similar to the requirement under the New Mexico felony aggravated battery statute that the defendant "caused great bodily harm" or "acted in a way that would likely result in death or great bodily harm." *See* N.M. R. ANN., Crim. UJI 14-323.

With respect to aggravated battery involving the use of a deadly weapon, several cases are instructive. As the magistrate judge noted, in *United States v. Maldonado-Palma*, 839 F.3d 1244, 1250 (10th Cir. 2016), the court held that New Mexico aggravated assault with a deadly weapon is categorically a crime of violence under the Sentencing Guidelines' force clause, which is identical to the ACCA's force clause. The use of a weapon "capable of producing death or great bodily harm . . . necessarily threatens the use of physical force." *Id.* Similarly, in *United States v. Ramon Silva*, 608 F.3d 663, 670–71 (10th Cir. 2010), the court held that New Mexico's "apprehension causing" aggravated assault statute qualified under the force clause of the ACCA. Even though the assault statute could be violated without any actual physical contact or violence

weapon), *with Curtis Johnson*, 559 U.S. at 140 (requiring more than mere touching to satisfy the force clause). Therefore, *Curtis Johnson* did not diminish the precedential value of *Treto-Martinez.* Instead, *Curtis Johnson* resolved a split among the circuits as to whether mere touching could satisfy the force clause—essentially affirming the Tenth Circuit's approach. *See generally United States v. Hays,* 526 F.3d 674, 677–81 (10th Cir. 2008) (discussing the circuit split); *id.* at 684 n.4 (Ebel, J., dissenting) (also discussing the circuit split). The Supreme Court held that mere touching was not enough, which is consistent with earlier Tenth Circuit decisions. *See, e.g.*, *United States v. Venegas-Ornelas*, 348 F.3d 1273, 1275 (10th Cir. 2003) ("Force, as used in the definition of a crime of violence, is synonymous with destructive violent force."); *Hays*, 526 F.3d at 681 ("[P]hysical force in a crime of violence[] must, from a legal perspective, entail more than mere contact. Otherwise, *de minimis* touchings could [suffice]." (internal quotation marks omitted)).

perpetrated against the victim, the conduct it criminalized "'could always lead to . . . substantial and violent contact, and thus . . . would always include as an element' the threatened use of violent force." *Id.* at 672 (quoting *Treto-Martinez*, 421 F.3d at 1160); *see also Taylor*, 843 F.3d at 1224 (noting that "regardless of the type of dangerous weapon that is employed by a particular defendant, the use of a dangerous weapon during an assault or battery always constitutes a sufficient threat of force to satisfy the [force] clause" (internal quotation marks omitted)).

The Tenth Circuit already has rejected many of the same arguments Anzures makes here with respect to the New Mexico statute that prohibits aggravated battery against a household member. *See Pacheco*, 2018 WL 1673153, at *3–*5. In *Pacheco*, the court held that the defendant's prior felony conviction for aggravated battery against a household member satisfied the ACCA's elements clause. *Id.* at *5. The only difference between the aggravated-battery-against-a-household-member statute and the regular aggravated-battery statute is the relationship of the victim to the perpetrator. *Compare* N.M. STAT. ANN. § 30-3-16 (aggravated battery against a household member) *with* N.M. STAT. ANN. § 30-3-5 (aggravated battery). Thus, the *Pacheco* decision again reinforces the correctness of the magistrate judge's analysis.

Based on these cases, the Court finds that New Mexico felony aggravated battery requires the use of physical force required by *Curtis Johnson*. Conviction under New Mexico's felony aggravated battery statute requires more than a mere touching. It requires the intent to injure and commission in a manner whereby great bodily harm is inflicted, or death or great bodily harm could be inflicted, or where a deadly weapon is used. *See* N.M. STAT. ANN. § 30-3-5(C). A battery committed in a manner that could inflict great bodily harm necessarily requires "force capable of causing physical pain or injury." *Curtis Johnson*, 559 U.S. at 140; *Treto-Martinez*, 421 F.3d at 1160. Likewise, a battery committed with the use of a deadly weapon "always

constitutes a sufficient threat of force to satisfy the [force] clause." *Taylor*, 843 F.3d at 1224

(internal quotation marks omitted). The additional requirements of felony aggravated battery—

essentially, that serious bodily injury did or could have occurred, or that a deadly weapon was

used—put the statute squarely in the range of conduct that the Tenth Circuit has found to satisfy

the physical force requirement of the elements clause. Notably, several other judges in this

District have reached the same conclusion.[4]

       Anzures's arguments to the contrary are unpersuasive. He argues that conviction under

the felony aggravated battery statute can result from any "unlawful touching, however slight."

Doc. 73 at 34–35. Because "aggravated battery subsumes battery," he contends, any unlawful

touch will satisfy the battery element, and no more force is required for conviction of the greater

offense of aggravated battery. *Id.* But Anzures cites no case that supports his argument. His

citations to cases analyzing simple battery, rather than felony aggravated battery, are inapposite.

*See State v. Ortega,* 1992-NMCA-003, 113 N.M. 437, 827 P.2d 152; *State v. Hill*, 2001-NMCA-

094, 131 N.M. 195, 34 P.3d 139. And the cases he cites that do evaluate the aggravated battery

statute indisputably involve the use of physical force. *See State v. Traeger*, 2001-NMSC-022,

130 N.M. 618, 29 P.3d 518 (defendant used baseball bat to beat victim).[5] Anzures ignores the

---

[4] *E.g.*, *Dallas v. United States*, 16-cv-0676 MV/LF, Doc. 21 at 2–12 (D.N.M. Dec. 4, 2017);
*Manzanares v United States*, 16-cv-0599 WJ/SMV, Doc. 21 at 18–24 (D.N.M. Sept. 6, 2017);
*Sanchez v. United States*, 16-cv-0659 JAP/GBW, Doc. 20 at 24–27 (D.N.M. July 5, 2017);
*Sedillo v. United States*, 16-cv-0426 MCA/LAM, Doc. 18 at 13–16 (D.N.M. Mar. 6, 2017);
*Vasquez v. United States*, 16-cv-0678 JAP/WPL, Doc. 11 at 8 (D.N.M. Jan. 10, 2017); *see also*
*United States v. Folse*, 15-cr-2485 JB, 2017 WL 4481158, *20–*25 (D.N.M. Oct. 5, 2017) (New
Mexico felony aggravated battery is a crime of violence under the § 4B1.2 of the Guidelines).

[5] Anzures further relies on *State v. Kraul*, 1977-NMCA-032, 90 N.M. 314, 563 P.2d 108, which
also is inapposite. *Kraul* held that simple battery and battery upon a peace officer are lesser
included offenses of aggravated battery upon a peace officer. But the fact that simple battery is a
lesser included offense of felony aggravated battery does not mean that the Court can ignore the
additional elements required to establish felony aggravated battery in determining whether that
offense is a violent felony under the ACCA.

plain language of the statute, which explicitly requires more than mere touching.  He cites no

authority suggesting otherwise.

        b.   *The Tenth Circuit's Decisions in Barraza-Ramos and Hays do not*
            *Determine the Outcome Here.*

Anzures argues that the Tenth Circuit's decision in *Barraza-Ramos*, 550 F.3d 1246 (10th

Cir. 2008), is particularly pertinent and should control the outcome of this case.  Doc. 73 at 31–

32.  I disagree.  The magistrate judge correctly held that the statute at issue in *Barraza-Ramos*

was not analogous to New Mexico's felony aggravated battery statute, and that the *Barraza-*

*Ramos* decision was not determinative.

In *Barraza-Ramos*, 550 F.3d at 1250–51, the Tenth Circuit held that a Florida aggravated

battery statute, which criminalized battery against pregnant women, did not satisfy the force

clause.  The statute could be violated by merely "touching" a pregnant woman against her will.

*Id*. at 1249.  *Barraza-Ramos* did not involve a battery statute with the additional requirements

that the defendant intend to injure the victim and that the defendant commit the battery (1) in a

manner that causes great bodily harm, (2) with the use of a deadly weapon, or (3) in a manner

whereby death or great bodily harm likely would be inflicted.  These additional requirements

distinguish New Mexico aggravated battery from the statute at issue in *Barraza-Ramos*.  And, as

explained in footnote 5 above, the fact that simple battery is a lesser included offense of felony

aggravated battery does not permit the Court to ignore the additional elements of felony

aggravated battery in determining whether it satisfies the elements clause of the ACCA.  New

Mexico's felony aggravated battery, N.M. STAT. ANN. §§ 30-3-5(A), (C), qualifies as a violent

felony under the elements clause of the ACCA

Anzures also relies heavily on the Tenth Circuit's decision in *Hays*.  *See* Doc. 73 at 31–

32.  In *Hays*, 526 F.3d at 681, the court held that a Wyoming battery statute did not satisfy the

"use of physical force" element required to satisfy the definition of a "misdemeanor crime of domestic violence."  However, the underlying statute in *Hays* could be violated by unlawfully touching someone in a rude, insolent or angry manner.  *Id.* at 678.  Because that provision could be violated by "any contact, however slight," the court held that it did not satisfy the force clause.  *Id.* at 678–79.  As discussed above, aggravated felony battery in New Mexico requires more than "any contact, however slight."  *Hays* therefore does not control the outcome of this case.

      c.   *The Magistrate Judge Correctly Applied the Modified Categorical Approach.*

Anzures's final argument is that the magistrate judge erred in applying the modified categorical approach to the statute at issue here.  He argues, for the first time, that the magistrate judge should not have reviewed the court documents attached as exhibits to the government's response, and he asks the Court to strike those exhibits.  *See* Doc. 73 at 38.  Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.  *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001).  Nonetheless, even without considering the court documents attached to the government's response, the magistrate judge did not misapply the modified categorical approach.

Anzures suggests that the magistrate judge found that subsection C of N.M. STAT. ANN. § 30-3-5 was divisible.  Doc. 73 at 37.  This is simply incorrect.  The magistrate judge held only that subsection C was divisible from subsection B, not that the three methods of committing felony aggravated battery under subsection C were divisible from each other.  Doc. 70 at 19.  The magistrate judge specifically declined to decide whether subsection C was divisible, and instead found that however felony aggravated battery was committed, it qualified as a violent felony under the ACCA.  *See id.* at 20 ("The Court need not decide that question [whether

subsection C is divisible] . . . ."), 27 ("[A]ll three of the *means* by which one can violate N.M. STAT. ANN. § 30-3-5(C) satisfy the force requirement set out in [*Curtis*] *Johnson*." (emphasis added)).

Anzures's argument that the magistrate judge should not have used the modified categorical approach to determine whether he violated subsection B or C is baffling. He argues that "whether aggravated battery is divisible in this way is irrelevant because both versions require proof of an unlawful touch." Doc. 73 at 37. Although it is true that both the misdemeanor offense and the felony offense require proof of an unlawful touch, the magistrate judge needed to determine whether Anzures's prior offense was a *felony*, and therefore potentially a *violent felony* under the ACCA, or merely a misdemeanor. The only way to make this determination was to apply the modified categorical approach.[6] That determination only informed the Court as to what additional elements form the basis of a felony aggravated battery under New Mexico law and was a proper application of the modified categorical approach. *See Mathis v. United States*, 136 S. Ct. 2243, 2253 (2016) ("the modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction"). And although Anzures repeatedly argues that the Court should not consider all of the elements of felony aggravated battery to determine whether it qualifies as a violent felony under the ACCA, the Tenth Circuit has held otherwise. *See Taylor*, 843 F.3d at 1223–24 (sentencing court properly considered whether the additional element of the use of a dangerous weapon during an assault or battery was sufficient to satisfy the elements clause of the career offender provision of the

---

[6] The magistrate judge did not need to view the exhibits attached to the government's response to make this determination. Anzures admitted in his plea agreement that he had been convicted of felony aggravated battery in the state of New Mexico in the early 1990s. *See* Doc. 36 at 4, 8.

Guidelines).  The magistrate judge did not err in applying the modified categorical approach to determine the elements of felony aggravated battery under New Mexico law.

## III.     Conclusion

For the foregoing reasons, the Court overrules Anzures's objections (Doc. 73).

IT IS THEREFORE ORDERED that the Proposed Findings and Recommended Disposition (Doc. 70) is ADOPTED by the Court.

IT IS FURTHER ORDERED that this case is DISMISSED with prejudice, and that a final judgment be entered concurrently with this order.

_____
UNITED STATES DISTRICT JUDGE